# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| CAREY MILLER | : |
| | : Case No. 1:11-cv-821 |
| vs. | : |
| | : Judge |
| NAPHCARE, Inc. | : |
| 330 W. Second St | : Magistrate Judge |
| Dayton, OH 45402-1414 | : |
| | : **COMPLAINT WITH REQUEST FOR** |
| Serve: NATIONAL SERVICE | : **DAMAGES AND WITH JURY** |
|         INFORMATION, INC., | : **DEMAND** |
|         Statutory Agent | : |
|         145 BAKER STREET | : |
|         MARION OH 43302 | : |
| and | : |
| INICE CARPENTER, LPN, Individually and | : |
| as an employee of NaphCare, Inc. | : |
| 1000 Sycamore Street, Rm. 110 | : |
| Cincinnati, OH 45202-1336 | : |
| and | : |
| BEVERLY BOMAR, Individually and as an | : |
| employee of NaphCare, Inc. | : |
| 1000 Sycamore Street, Rm. 110 | : |
| Cincinnati, OH 45202-1336 | : |
| and | : |
| CAROL HUBBARD, MD, Individually and | : |
| as an employee of NaphCare, Inc. | : |
| 1000 Sycamore Street, Rm. 110 | : |
| Cincinnati, OH 45202-1336 | : |
| and | : |
| MELINDA ADAMS, RN, Individually and as | : |
| an employee of NaphCare, Inc. | : |
| 1000 Sycamore Street, Rm. 110 | : |
| Cincinnati, OH 45202-1336 | : |
| and | : |

| | |
|---|---|
| LETICA SMITH, Individually and as an employee of NaphCare, Inc.<br>1000 Sycamore Street, Rm. 110<br>Cincinnati, OH 45202-1336 | : <br> : <br> : <br> : <br> : |
| and | : <br> : |
| STEVE MULLINS, LPN, Individually and as an employee of NaphCare, Inc.<br>1000 Sycamore Street, Rm. 110<br>Cincinnati, OH 45202-1336 | : <br> : <br> : <br> : <br> : |
| and | : <br> : |
| MICHELLE CLARK, LPN, Individually and as an employee of NaphCare, Inc.<br>1000 Sycamore Street, Rm. 110<br>Cincinnati, OH 45202-1336 | : <br> : <br> : <br> : <br> : |
| and | : <br> : |
| TERESA DODD, Individually and as an employee of NaphCare, Inc.<br>1000 Sycamore Street, Rm. 110<br>Cincinnati, OH 45202-1336 | : <br> : <br> : <br> : <br> : |
| and | : <br> : |
| MELISSA BARBRO, Individually and as an employee of NaphCare, Inc.<br>1000 Sycamore Street, Rm. 110<br>Cincinnati, OH 45202-1336 | : <br> : <br> : <br> : <br> : |
| and | : <br> : |
| KAREN WALLACE, Individually and as an employee of NaphCare, Inc.<br>1000 Sycamore Street, Rm. 110<br>Cincinnati, OH 45202-1336 | : <br> : <br> : <br> : <br> : |
| and | : <br> : |
| SGT. MALEY, Individually<br>1000 Sycamore Street, Rm. 110<br>Cincinnati, OH 45202-1336 | : <br> : <br> : <br> : |

.
.
.
.
.
.

I.   PARTIES TO THE ACTION ............................................................................................... 3
II.  JURISDICTION AND VENUE ......................................................................................... 4
III. FACTUAL ALLEGATIONS .............................................................................................. 5
IV.  CAUSES OF ACTION ....................................................................................................... 9
   A. COUNT I- VIOLATION OF 42 U.S.C § 1983 (Each and Every Defendant).................... 9
   B. COUNT II- DELIBERATE INDIFFERENCE (Each and Every Defendant) ................... 9
   C. COUNT III- NEGLIGENCE (Each and Every Defendant) ............................................ 10
   D. COUNT IV- VIOLATION OF OAC 5120:1-8-19, OAC 5120:1-8-09, and ORC 5120.01
   (Each and Every Defendant) ................................................................................................. 11
V.   DAMAGES ....................................................................................................................... 11
VI.  PRAYER FOR RELIEF ................................................................................................... 12

COMES NOW Plaintiff, CAREY MILLER, by and through counsel, and for his Complaint against the above-named Defendants, states as follows:

**I.     PARTIES TO THE ACTION**

1. Plaintiff CAREY MILLER, was at all times relevant, incarcerated in the Hamilton County Justice Center (HCJC) located at 1000 Sycamore Street, County of Hamilton, and State of Ohio.

2. Defendant Sgt. Maley was, at all times relevant, jail staff at the Hamilton County Justice Center.  This is action is brought against these Defendant in his individual capacity.

3. Defendants Inice Carpenter, R.N., Beverly Bomar, Carol Hubbard, M.D., Melinda Adams, R.N., Letica Smith, Steve Mullins, L.P.N., Michelle Clark, L.P.N., Teresa Dodd, Melissa Barbro, and Karen Wallace were, at all times relevant, medical personnel at the Hamilton County Justice Center.  This action is brought against these Defendants in their individual capacities and as employees of Defendant NaphCare, Inc.

4. Defendant NaphCare, Inc. is an Alabama corporation duly organized and authorized to conduct business in the State of Ohio and whose principal office address is 950 22nd Street North, Birmingham, Alabama, and whose registered agent is Bradley Cain at same address.

5. Defendant NaphCare, Inc. employs the medical professionals responsible for attending to the medical needs of inmates of the Hamilton County Justice Center and as such established policies either formally or by custom and practice, and was responsible for the employment, training, supervision and conduct of persons responsible for medical care of inmates and neglected care of the Plaintiff as described herein.

6. Defendants, individually and in concert with one another, engaged in the conduct described below under color of the law of the State of Ohio and Hamilton County. The offenses described below resulted from the failure of Defendants to employ qualified persons for positions of authority, and/or to properly train and supervise the conduct of such persons after their employment, and/or to promulgate appropriate operating policies and procedures either formally or by custom and practice, to protect the constitutional rights of the citizens of the State of Ohio.

7. Defendants' conduct was intentional or grossly negligent, and was indicative of deliberate indifference to and reckless disregard for, the constitutional and common law rights of Plaintiff, justifying an award of punitive damages in addition to the actual damages which Plaintiff is entitled to recover.

## II. JURISDICTION AND VENUE

8. This action arises under the United States Constitution, particularly under the provisions of the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution and

under the laws of the United States, particularly under the Civil Rights Act, Title 42 of the United States Code, Sections 1983 and 1988.

9. That this Court has jurisdiction of this action under the provisions of Title 28 of the United States Code, Sections 1331 and 1343, and also has pendent jurisdiction under United States Code, Section 1363 over all state claims that arise out of the nucleus of operative facts common to Plaintiffs' federal claims.

10. Venue is proper in this Court under 28 U.S.C. § 1391(a), since the events giving rise to this claims occurred in this Judicial District and Defendants are subject to personal jurisdiction here.

11. The Plaintiff brings this suit against each and every Defendant in their individual capacities.

12. That each and every act of Defendants, as set forth herein, were done by those Defendants under the color and pretense of the statutes, ordinances, regulations, laws, customs, and usages of the County of Hamilton, and State of Ohio, and by virtue of, and under the authority of, each individual Defendants' employment or contracting with the County of Hamilton.

### III. FACTUAL ALLEGATIONS

13. Plaintiff incorporates by reference each and every allegation contained in the paragraphs above and further states:

14. On November 13, 2010, Plaintiff Carey Miller was arrested for aggravated possession of drugs and possession of heroin and was incarcerated in the Hamilton County Justice Center.

15. At the time of Plaintiff's incarceration, he was addicted to heroin but otherwise in good health. He had no history of head trauma or mental defects before incarceration.

16. Inice Carpenter completed the Receiving Screening and Mental Health Screening of Plaintiff, each of which did not mark Plaintiff as a user of drugs or alcohol.

17. On or around November 15, 2010, at 12:48pm Plaintiff stated to Defendant Beverly Bomar that he was feeling "dope sick" from heroin withdrawal.  Defendant Bomar documented that she initiated the Heroin Detoxification Alert protocol.

18. Despite the initiation of the Heroin Detoxification Alert protocol, medical records indicate that Plaintiff was observed and assessed only infrequently.

19. On or around November 16, 2010 at 2:33pm Defendant Melinda Adams completed a Drug Withdrawal Report Sheet that stated Plaintiff was experiencing hallucinations, tremors, restlessness, lethargy, diarrhea and constipation.  No medications or education on drug withdrawal was given.

20. Later that day, Defendant Carol Hubbard, M.D. ordered opiate withdrawal medication for Plaintiff; despite this order the drug withdrawal report sheets do not indicate that Plaintiff ever received any medications or was physically seen by the Defendant physician.

21. On or around November 17, 2010, Defendant Steve Mullins completed a Drug Withdrawal Report Sheet that stated Plaintiff was suffering mild withdrawal symptoms. The report indicates no medications were given.

22. A few hours later, Defendant Teresa Dodd completed a Progress Report entry indicating Plaintiff was found in his cell suffering from tremors and a possible seizure.  Plaintiff was taken to medical where he reported he was withdrawing from heroin.  Plaintiff was given two juice boxes, told to rest, continue protocol meds, and returned to the housing unit.

23. Plaintiff was not provided emergent medical care or substantive medical treatment for his seizure.

24. A second Drug Withdrawal Report Sheet completed at 1:25pm on November 17, 2010 by Defendant Letica Smith, indicated Plaintiff was not experiencing any symptoms of withdrawal. Again, the report indicates Plaintiff was not given any medications.

25. A short time later on November 17, 2010, Defendant Melissa Barbro completed a Progress Report entry indicating Plaintiff was acting suspicious and paranoid. Plaintiff was transferred to the Mental Health Unit where he was placed in an observation cell.

26. On or around 5:27am on November 18, 2010, Defendant Michelle Clark completed a Drug Withdrawal Report Sheet indicating Plaintiff was not experiencing any symptoms of withdrawal. Again, the report indicates Plaintiff was not given any medications.

27. A short time later at 10:30am on November 18, 2010, an inmate advised Deputy Broyles that Plaintiff was having what appeared to be a seizure. Deputy Temke is noted as having responded. Plaintiff was taken to medical via wheelchair by Deputy Brannon. Defendant Deputy Broyles notified his supervisor Sgt. McAuliffe of the incident.

28. Despite the evidence of a second seizure, no medical reports or progress notes were completed to indicate if any treatment was provided to the Plaintiff.

29. Despite experiencing a second seizure, Plaintiff was not provided any emergent medical care.

30. Despite the second seizure, no medical assessments, observations, reports or Drug Withdrawal Report Sheets were completed for the entire rest of the day (11/18/2010).

31. On or around 4:40am on November 19, 2010, Plaintiff was discovered in his cell by Defendant Michelle Clark and Deputy Pierce, disoriented and with dried and moist blood on the right side of his head, in the course of a routine blood pressure test. EMS was

called. Defendant Sgt. Maley was the supervisor at the time and Defendant Karen Wallace entered the progress notes for the event.

32. Plaintiff was transported to the University Hospital Emergency Room. Shortly after arrival, he was admitted to the Neurosurgical Intensive Care Unit.

33. CT scans of Plaintiff's head revealed a right temporal epidural hematoma, left temporal contusions, scattered bilateral subarachnoid hemorrhages and multiple skull and facial fractures.

34. A speech and language evaluation the following day revealed moderate to severe Wernicke's aphasis with mild expressive deficits.

35. The attending physician Dr. Christopher Palmer stated in Plaintiff's medical records that "[i]t was noted that over the past day or two he has been pounding his head against a brick wall or against the bed" and "the only possibility is that he could beat himself up within the confined cell this evening."

36. The medical records do not indicate who provided Dr. Palmer this information. Further, not once, is self harming behavior indicated in any of the jail medical records or reports.

37. Either, the unknown individual who provided this information to Plaintiff's treating physician was not being truthful, or the self harming behavior was not documented by jail or medical staff and Plaintiff was not prohibited from engaging in self harming behavior or protected from injuring himself.[1]

38. During heroin withdrawal mood changes both self harming behavior and seizures are common.

---

[1] Under either theory, Defendants would be charged with the duty to provide the Plaintiff appropriate medical care.

39. Plaintiff cannot recall exactly what happened to him because of memory loss. To this day he suffers long and short term memory loss and has difficulty speaking, writing, and performing other basic tasks.

## IV. CAUSES OF ACTION

### A. COUNT I- VIOLATION OF 42 U.S.C § 1983 (EACH AND EVERY DEFENDANT)

40. The Plaintiff incorporates by reference each and every allegation in the paragraphs above.

41. The Defendants, under color of state law, subjected Mr. Miller, and/or caused Mr. Miller to be subjected to the deprivation of the rights, privileges, and immunities secured to him by the United States and Ohio Constitutions.

42. The Defendant's conduct was a violation of Plaintiff's right to due process of law of his right not to be subjected to cruel and unusual punishment under the 5th, 8th, and 14th Amendments to the United States Constitution in violation of the Civil Rights Act of 1871, 42 U.S.C. §1983.

43. As a direct and proximate result of the Defendants' actions, Mr. Miller has permanent and debilitating injuries.

### B. COUNT II- DELIBERATE INDIFFERENCE (EACH AND EVERY DEFENDANT)

44. The Plaintiff incorporates by reference each and every allegation in the paragraphs above.

45. The constitutional proscription against cruel and unusual punishment limits the conditions under which the state may confine persons convicted of crimes. Prison authorities may not withhold from prisoners the basic necessities of life, which include necessary medical attention and treatment.

46. Such practices constitute an arbitrary use of government power, and evince a total, intentional and unreasonable disregard for and deliberate indifference to the health, well-

being and constitutional and common law rights of persons incarcerated at the HCJC, including Plaintiff.

47. Mr. Miller was suffering from severe heroin withdrawal when confined after daily heroin use of up to one (1) gram per day.

48. Symptoms of heroin withdrawal can be moderate to severe and include restlessness, diarrhea, cold flashes, tremors, panic, convulsions, stroke, depression, and suicidal tendencies.

49. Mr. Miller experienced the most serious of these symptoms and each Defendant had actual knowledge he was suffering from them.

50. Mr. Miller's symptoms, seizures, and possible attempts to injure himself should have placed Defendants on high alert and Defendants should have realized emergent care was necessary.

51. The Defendants failed or refused to provide necessary medical attention.

52. As a result, Plaintiff suffered permanent and debilitating injuries.

53. Given the pre-existing duty that clearly prohibits Defendants' conduct, Defendants' treatment of Mr. Miller was intentional, wanton, and malicious, and was indicative of a total and reckless disregard and deliberate indifference to the rights of, and harm to, Mr. Miller.

54. The deliberate indifference to the serious medical needs of Mr. Miller constitutes cruel and unusual punishment under the Eighth Amendment of the United States Constitution.

C. **COUNT III- NEGLIGENCE (EACH AND EVERY DEFENDANT)**

55. The Plaintiff incorporates by reference each and every allegation in the paragraphs above.

56. The Defendants owe a duty to inmates to keep them safe, protect them from unnecessary harm, and to exercise reasonable and ordinary care for the prisoner's life and health.

57. By virtue of the foregoing, Defendants were negligent and grossly negligent, and violated the standards applicable to their professions, all to the damage of Plaintiff.

### D. COUNT IV- VIOLATION OF OAC 5120:1-8-19, OAC 5120:1-8-09, AND ORC 5120.01 (EACH AND EVERY DEFENDANT)

58. The Plaintiff incorporates by reference each and every allegation in the paragraphs above.

59. Under OAC 5120:1-8-19, OAC 5120:1-8-09, and ORC 5120.01 the defendants are given charge of the HCJC and all persons confined therein and are required to keep such persons safe, including providing adequate medical care.

60. The defendants are bound to exercise in the control and management of the jail the degree of care required for the reasonably adequate protection of the prisoners or inmates.

61. By virtue of the foregoing, Defendants violated the standards applicable to their professions, all to the damage of the Plaintiff.

## V. DAMAGES

62. As a consequence of Defendants' wrongful conduct, Plaintiff was denied appropriate medical treatment and deprived of supervision necessary to protect his health.

63. As a result of the foregoing, Plaintiff experienced unnecessary pain and suffering and severe and unjustified mental and emotional distress which ultimately resulted in permanent and debilitating injuries, and for which the Plaintiff is entitled to recover actual damages.

64. Furthermore, Defendants' violations of the Plaintiff's rights were knowing, intentional, cruel and malicious, entitling the Plaintiff to recover punitive damages from Defendants in order to deter such conduct in the future.

**VI.     PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff request judgment on all counts in addition to cost and interest associated with the disbursement of this action.  The Plaintiff also request:

(a) A trial by jury;

(b) Actual and punitive damages; and

(c) Costs, attorney fees, pre- and post-judgment interest and all other relief to which they are entitled.

                              Respectfully submitted,


                              /s/ Charles T. Lester, Jr.
                              Charles T. Lester, Jr. (0017601)
                              clester@ericdeters.com
                              ERIC C. DETERS & ASSOCIATES PSC
                              5247 Madison Ave.
                              Independence, Kentucky 41051
                              Phone: 859-363-1900
                              Fax: 859-363-1444